UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONDA L. McEWEN,

                    **Plaintiff,**                      **CIVIL ACTION NO. 12-13298**

          **vs.**                            **DISTRICT JUDGE MARIANNE O. BATTANI**

**COMMISSIONER OF**                   **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                   **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment or remand (docket no. 12) be granted, Defendant's motion for summary judgment (docket no. 19) be denied, and this case be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.**    **PROCEDURAL BACKGROUND**

       Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on February 2, 2009, alleging disability beginning August 1, 2008. (TR 135-41).  The applications were denied and Plaintiff filed a timely request for a *de novo* hearing. On October 18, 2010 Plaintiff appeared with counsel in Oak Park, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Patricia S. McKay.  (TR 28-73).  Vocational Expert (VE) Kelly Stroker also appeared and testified at the hearing.  In a November 6, 2010 decision the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act from August 1, 2008, the alleged onset of disability date, through November 6, 2010,

1

the date of the decision, because she remained capable of performing past relevant work as an inspector/sorter as well as other work that exists in significant numbers in the national economy. The Appeals Council declined to review the ALJ's decision and Plaintiff filed the instant action for judicial review.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was forty-three years old on her alleged disability onset date. (TR 38). She dropped out of high school after the eleventh grade and has not obtained a GED or pursued vocational training. (TR 39-40). She lives with her adult daughter. Plaintiff testified that she worked in parts assembly and as a "fire watcher" for a refinery where she was responsible for extinguishing fires that began as others worked. She has also bagged potato chips at Better Maid and she has worked as a school lunch aide and as a summer school custodian.

Plaintiff reported that she has cervical and lumbar spine disabilities. She testified that she underwent cervical spine surgery that improved her neck issues but not her left shoulder problems. She claims to have osteoarthritis of the left shoulder and diminished use of her left arm. (TR 48). She has cramping pain in her left hand and foot. Plaintiff reported lower left back pain radiating into her left buttock and leg for which she may need surgery. She stated that she takes medication that eases the pain but does not stop it. (TR 51). She uses a back brace every day and a cane for balance and support. (TR 48-49, 51, 53). She stated that she elevates her legs to table height four times a day for approximately thirty to sixty minutes each time to help relieve pain. (TR 52). She testified that she is depressed. (TR 50). She sleeps only three hours each night due to pain and she takes a one hour nap each day.

2

Plaintiff testified that she takes public transportation because she no longer has a valid driver's license.  She reported that she cares for her own personal hygiene, cooks, washes laundry at times, straightens her bed, and washes the tub after each use.  (TR 45-46).  She watches television and movies to pass the time.  She reported that she can lift less than ten pounds.

**B.    Medical Evidence**

The undersigned has thoroughly reviewed the medical evidence and will discuss limited portions of the record below.  MRI testing conducted August 2008 showed degenerative changes at several levels of the cervical spine, severe at the C4-5 level with spinal cord compression, moderate central canal stenosis, and severe left neural foraminal stenosis.  (TR 201-02).  At the C3-4 and C6-7 levels she had mild central canal stenosis and no cord compression.  On April 24, 2009 Plaintiff underwent an anterior cervical discectomy at the C3-4 and C4-5 levels with decompression of the spinal cord and osteophytectomy.  (TR 238).  The record shows that Plaintiff recovered well from her cervical spine surgery.  (TR 249).  Several weeks post-operative Plaintiff was observed to have full strength and full range of motion of the left arm with no pain, but some neck soreness and aching pain in the left anterior thigh.  (TR 251).

Plaintiff again sought medical treatment for left shoulder pain beginning in or around November 2009.  (TR 278-79).  An MRI of the left shoulder taken at the time showed mild supraspinatus tendinopathy, mild to moderate changes in the acromioclavicular joint which may cause extrinsic impingement, mild subacromial subdeltoid bursitis, and possible adhesive capsulitis. (TR 279).  In February 2010, Dr. Marc Milia examined Plaintiff for complaints of left shoulder pain. (TR 276-77).  The doctor noted that Plaintiff had undergone cervical spine surgery but continued to have nonradicular pain with overhead activities from her trapezium into her deltoid.  He also

3

noted that Plaintiff had full motor strength and full neck range of motion. The doctor diagnosed Plaintiff with left shoulder acromioclavicular arthritis and impingement syndrome and discussed with Plaintiff the option of arthroscopy and subacromial decompression and distal clavicle resection.

Shortly after her cervical surgery Plaintiff began complaining of left back pain radiating into the left buttock and leg. (TR 249). A May 2009 MRI of the lumbar spine revealed moderate disc desiccation at L5-S1 with moderate to severe facet arthritis bilaterally, along with moderate exit stenosis on the right and moderate to severe exit stenosis on the left. (TR 246-47). Dr. Hazem Eltahawy examined Plaintiff in June 2009 and documented that she was in tears from the severe pain. (TR 249). The doctor reviewed the MRI and concluded that Plaintiff would likely need surgical intervention with decompression, laminectomy, facetectomy, and transforaminal fusion. An August 2009 pain clinic evaluation found that Plaintiff had midline and left SI tenderness on palpation, no straight leg raising sign, a normal gait, and intact senses. (TR 263). The examiner concluded that Plaintiff was displaying signs consistent with radiculopathy and recommended lumbar epidural steroid injections and an increase in her Vicodin pain medication.

Dr. Sonia Ramirez examined Plaintiff in April 2009 for the state disability determination service. (TR 205). The doctor documented that Plaintiff had a reduced cervical spine and left shoulder range of motion with pain, and normal range of motion of the lumbar spine, right shoulder, bilateral elbow, hip, knee, and hands-fingers. She noted that Plaintiff was able to stand, sit, bend, stoop, carry, and pull with no limitations. (TR 210). The doctor noted that Plaintiff's gait was normal, she did not need a walking aid, her straight leg raising was negative, and she had full grip strength in her affected extremity although she did most of her pushing and pulling with her right hand. (TR 206, 211). Under "results" the doctor wrote "normal." (TR 211). Despite these findings

4

the doctor opined that Plaintiff had degenerative disc disease of the cervical spine with possible radiculopathy to the left shoulder and would not be able to work.  (TR 206-07).

In May 2009 Dr. Sanjay Lakhani completed a medical examination report for the state disability determination service.  (TR 243-44).  The doctor recorded that Plaintiff had a normal musculoskeletal examination.  (TR 243).  He also noted that Plaintiff had physical limitations that were expected to last more than ninety days.  The doctor documented that Plaintiff could frequently lift and carry less than ten pounds and never more, stand and/or walk less than two hours in an eight hour work day without the use of a cane, use both upper extremities for simple grasping, reaching, pushing/pulling, and fine manipulation, and use both lower extremities for operating foot and leg controls.  He also found that she had limitations in her ability to have sustained concentration.

Sharon Giles, a single decisionmaker, completed a physical residual functional capacity assessment in July 2009.  (TR 218-25).  Ms. Giles opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit about six hours in an eight hour workday, with unlimited push and pull activities.  She concluded that Plaintiff had no postural, visual, or communicative limitations.  Ms. Giles found that Plaintiff was limited in her ability to reach in all directions including overhead with her left shoulder, but she otherwise had no manipulative limitations. She found that Plaintiff needed to avoid work place hazards but concluded that she had no other environmental limitations.

Dr. Lakhani completed a second physical residual functional capacity assessment in October 2010.  (TR 281-84).  The doctor observed that symptoms of depression and anxiety affected Plaintiff's physical condition.  He documented that Plaintiff was incapable of performing even low stress jobs and observed that her pain and symptoms would frequently interfere with the attention

5

and concentration required to perform even simple work tasks. Dr. Lakhani documented that Plaintiff could walk one half block, sit for thirty minutes at a time, stand for twenty minutes at a time, sit/stand/walk less than two hours in an eight hour work day, use a cane while engaging in occasional standing and walking, and elevate her legs to chair level fifteen to twenty percent of her day. He opined that Plaintiff would need to shift positions at will, take unscheduled breaks, and take ten minute walking breaks every ten minutes. He found that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds. She could occasionally twist and climb stairs and rarely or never climb ladders, stoop, or crouch. She had limited ability to grasp, reach with her arms, and perform fine manipulation with her fingers. He estimated that Plaintiff would be absent from work more than four days each month.

## C.    Vocational Expert Testimony

The Vocational Expert (VE) testified that Plaintiff had past relevant work in packaging and in motor vehicle assembly at the medium, unskilled level, and as a skilled safety technician at a medium exertional level as performed. (TR 55-64). After a lengthy discussion concerning Plaintiff's past work, the VE testified that Plaintiff also had past work sorting brakes which was classified as a general inspector/sorter at the light, unskilled level. (TR 62-64, 156). She further testified that Plaintiff's skills as a safety technician could transfer to work as a merchant patroller, otherwise known as an unarmed security guard, at the light, semi-skilled level. (TR 64).

The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who has the residual functional capacity to perform the full range of light work with the following restrictions: (a) limited to occasional activities such as climbing stairs, crouching, crawling, kneeling, stooping, and bending, (b) occasional reaching overhead with her left upper

6

extremity, (c) requires the ability to perform her work either seated or standing at her option, and (d) needs to avoid work place hazards such as unprotected heights, dangerous moving machinery, or climbing of ladders.  The VE offered the following testimony: "In my opinion ... only that possibly of the inspector/sorter and I give that for the reason of the sit/stand option would be up to the employer, so I can't say for sure her past employer would allow that."  She went on to state that an individual with these limitations would be capable of performing the inspector/sorter position as the position is generally performed.  (TR 66).

Next, the ALJ asked the VE to assume there was no past relevant work because the record was not clear as to what constituted Plaintiff's past work.  (TR 66).  The VE testified that in the absence of past relevant work, the individual could perform light, unskilled work as a gate attendant, assembler, light work as a packager, and light, semi-skilled work as a merchant patroller, consisting of 8,000 jobs in Southeast Michigan.  (TR 64, 66-67).  She could also perform sedentary, unskilled work as a surveillance system monitor for an additional 1,000 jobs in Southeast Michigan.  (TR 69).  The VE testified that the individual could still perform these same jobs if she needed to avoid using foot pedals with her left lower extremity or if she could not climb stairs.  (TR 69).

The ALJ then asked the VE if jobs were available for a hypothetical claimant who was limited to unskilled, simple, routine, repetitive, non-production oriented work.  The VE testified that this restriction would eliminate the merchant patroller job but would not affect the individual's ability to perform the other listed positions.  (TR 67-68).  When prompted by the ALJ, the VE further testified that if she were to assume that the inspector/sorter job was past relevant work that could be performed either standing or sitting, the limitations of unskilled, simple, routine, repetitive, non-production oriented work would not preclude work at that position.  (TR 68).

7

The VE testified that the individual would be limited to performing the position of gate attendant if she was restricted in her ability to flex, extend or rotate her head or neck up to twenty degrees.  (TR 68).  The VE testified that a restriction requiring the individual to have at least two morning and two afternoon breaks for the purpose of being recumbent would eliminate all jobs.  (TR 69).  All jobs would also be eliminated if the ALJ found that Plaintiff's testimony was fully credible, or if Plaintiff could sit, stand, and walk for less than two hours in an eight hour workday.  (TR 70). The VE testified that there would be no jobs available if the individual would have unscheduled absences more than four days each month due to pain and medication, or if she would be off task more than twenty percent of each day.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2010.  (TR 17).  She also found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 1, 2008.  (TR 17).  The ALJ found that while Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine with central canal stenosis status post anterior discectomy and fusion with hardware insertion, degenerative disc disease of the lumbar spine with facet arthritis bilaterally, and degenerative joint disease of the left shoulder/AC joint arthritis with impingement syndrome, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (TR 17-18).  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of light work with the following limitations: (a) occasional climbing of stairs, crouching, crawling, kneeling, stooping and bending, (b) occasional reaching overhead with the left upper extremity, (c) requires the ability to alternate between sitting and standing while engaged in

8

work activities, and (d) should avoid exposure to work place hazards such as moving machinery, unprotected heights, and climbing of ladders. (TR 18-21). The ALJ concluded that Plaintiff was capable of performing her past relevant work as an inspector/sorter. In the alternative, and because there was some ambiguity as to whether Plaintiff's past work as inspector/sorter rose to the level of past relevant work, the ALJ found based on VE testimony that Plaintiff was capable of performing other jobs that existed in significant numbers in the national economy. (TR 21-23). Consequently the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from August 1, 2008, the alleged onset of disability, through the date of the ALJ's decision.

## V.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d

9

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.

*Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4.  she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing

her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age,

education and past work experience to determine if she could perform other work.  If she could not,

she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the

burden of proof only on "the fifth step, proving that there is work available in the economy that the

claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make

a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to

perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert

testimony in response to a hypothetical question if the question accurately portrays the plaintiff's

physical and mental impairments.  *Id.* (citations omitted).

**C.      Analysis**

Plaintiff argues that the ALJ erred in her credibility assessment, failed to give proper weight

to the opinions of Plaintiff's treating physician, and erroneously found work at step five.

10

1.     *Credibility Assessment*

The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly since the ALJ has the opportunity to observe the demeanor of the witness. *Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993) (citation omitted). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

S.S.R. 96-7p, 61 FR 34483, at 34485-86, 1996 WL 362209. The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

*Id.* at 34486.

The Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to the available objective

11

medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ reviewed Plaintiff's testimony, her Adult Function Report, and other evidence of record and concluded that Plaintiff's limiting statements were not credible to the extent they were inconsistent with the medical evidence of record and previously reported activities of daily living. (TR 19).  The ALJ found it odd that Plaintiff claimed to need a cane to assist with ambulation when clinical examinations for the most part revealed negative straight leg raise testing, normal strength and sensation, and a normal gait.  (TR 19).  She also found it odd that Dr. Lakhani sanctioned the use of a cane for occasional standing or walking despite the fact that neither he nor any other physician prescribed a cane.  (TR 19).  The ALJ found that Plaintiff's testimony that her cervical spine surgery helped her neck but did little to alleviate the pain in her arm was not consistent with the medical evidence that showed that Plaintiff had good range of motion and full strength following surgery.  She also noted that Plaintiff did not identify any back related complaints on her Adult Function Report, focusing instead on her neck and arm.

The Court is not persuaded that the ALJ's credibility assessment is supported in its entirety by substantial evidence.  While it's true that the evidence shows that Plaintiff experienced immediate positive results from the cervical surgery and had a full range of motion of the left shoulder without

12

pain, the record indicates that these results were not long lasting.  Evidence shows that Plaintiff sought medical treatment for left shoulder pain less than a year after her surgery. (TR 276, 278-79). It also shows that Plaintiff had tenderness in the trapezium and pain with overhead activities from her trapezium into her deltoid.  Following her surgery, Plaintiff was diagnosed with left shoulder acromioclavicular arthritis and impingement syndrome and was told that she may require arthroscopy and subacromial decompression and distal clavicle resection with no guarantee that her trapezial pain would subside.

In addition to the above, the ALJ discounted Plaintiff's credibility in part because Plaintiff focused only on her neck and arm issues and did not identify any back related complaints in her Adult Function Report.  While this may be true, the ALJ recognized during the administrative hearing that Plaintiff may have had some complaints regarding her lower extremities but did not voice her complaints until after her cervical surgery had occurred.  (TR 36).  This statement is consistent with the evidence, which suggests that Plaintiff may have believed that her back and lower extremity issues were related to or caused by her cervical spine issues.  The record shows that Plaintiff began complaining of lower extremity issues almost immediately after her surgery, and she expressed disappointment that her left anterior thigh aching pain was still present after surgery.  (TR 251).  The record also shows that Plaintiff has very real lumbar spine related issues.

After reviewing the record the undersigned is not persuaded that the ALJ's credibility assessment is supported in its entirety by substantial evidence.  Therefore, the undersigned recommends that this matter be remanded for reconsideration of Plaintiff's credibility pursuant to sentence four of 42 U.S.C. § 405(g).

2.    *Treating Physician Rule*

Next, Plaintiff contends that the ALJ committed reversible error in failing to give proper weight to the May 21, 2009 medical source statement and the October 14, 2010 residual functional capacity assessment of Plaintiff's treating physician, Dr. Lakhani.

The Commissioner has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted). One such standard is that the ALJ must "give a treating source's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. (citation and internal quotation marks omitted). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id*. (citation and internal quotation marks omitted). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (citation and internal quotation marks omitted). The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id*. at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Here, the ALJ attributed less than controlling weight to Dr. Lakhani's October 2010 residual functional capacity assessment, crediting the opinion only to the extent that it was consistent with the other evidence of record. She also found that inconsistencies in Dr. Lakhani's May 2009 medical source statement undermined the weight she was willing to assign to that opinion. The ALJ reached these conclusions without specifically identifying the evidence upon which she based her

14

conclusions. It appears that the ALJ discounted the opinions of Dr. Lakhani in part based on the physical RFC assessment of the single decisionmaker, which found without much explanation that Plaintiff was capable of meeting the exertional standards for light work and had no postural limitations.

A review of the record shows that Ms. Giles, the single decisionmaker, stated in her report that Plaintiff had no problems with her lower extremities. It is reasonable to conclude that Ms. Giles based her assessment of Plaintiff's functional abilities in part on this belief. Contrary to Ms. Giles' assessment, at the time of her review Plaintiff had complained of left anterior thigh aching pain and had received an MRI which showed moderate disc desiccation at L5-S1 with moderate to severe facet arthritis bilaterally, along with moderate exit stenosis on the right and moderate to severe exit stenosis on the left. (TR 246-47). In addition, at the time of Ms. Giles' evaluation Plaintiff had been examined by Dr. Eltahawy, who noted that Plaintiff was in tears from the severe pain in her back and lower extremities and who concluded that surgical intervention of Plaintiff's lumbar spine issues would likely be necessary. Despite this flaw in the single decisionmaker's assessment, the ALJ appears to have assigned greater weight to her opinion than to the opinions of the treating physician.

The ALJ reviewed Dr. Lakhani's May 2009 findings that Plaintiff was limited to standing and/or walking less than two hours in an eight hour work day and observed that he did not impose limitations on her ability to sit. She noted that the doctor found that Plaintiff was capable of using both her upper and lower extremities for repetitive activities and foot controls. She also noted that the doctor found that Plaintiff was stable but not able to meet her needs in the home. The ALJ then rather vaguely concluded that the doctor's inconsistencies undermined the weight to which the opinion was entitled.

15

As for Dr. Lakhani's October 2010 residual functional capacity assessment, the doctor imposed rather severe physical limitations upon Plaintiff. The ALJ determined that Dr. Lakhani's opinion was not entitled to controlling weight because it was inconsistent with other evidence in the record. However, the ALJ reached this conclusion without clearly identifying the evidence with which Dr. Lakhani's opinion was inconsistent. Defendant cites evidence from the record that he claims "appears" to support the ALJ's conclusion. However, it is the ALJ's responsibility to provide reasons for discounting a treating physician's opinion. Failure to do so "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record. *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007).

The ALJ is required to give good reasons for the weight she gives a treating source's opinion and support her finding with substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). It is the undersigned's opinion that the ALJ failed to adequately support her decision to assign greater weight to the opinion of the single decisionmaker than to the opinions of Dr. Lakhani. Accordingly, the undersigned recommends that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

3.      *The RFC and Step Five Determination*

Next, Plaintiff argues that the ALJ erred in finding that she is capable of performing light exertional level work and failed to take all of Plaintiff's impairments into consideration in determining the RFC.

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). When determining the RFC, the ALJ must review all of the relevant evidence and consider each of the claimant's medically determinable impairments whether or not severe. 20

16

C.F.R. §§ 404.1545(a)(1), (2), 416.945(a)(1), (2).  The RFC is an assessment of the claimant's remaining capacity for work after her limitations have been taken into account.  *Howard v. Comm'r*, 276 F.3d 235, 239 (6th Cir. 2002) (citation omitted).  It is considered the most, not the least, the claimant can do despite her limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The Commissioner may base her determination that there is work available in the economy that the claimant can perform on VE testimony in response to a hypothetical question, but only if the hypothetical question accurately portrays the claimant's credible limitations.  *Varley,* 820 F.2d at 779 (citations omitted).

The Regulations state that light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §§ 404.1567(b), 416.967(b).  Furthermore, the full range of light work requires standing or walking for a total of six hours in an eight hour workday.  S.S.R. 83-10, 1983 WL 31251, at *5.

Here, the ALJ found that Plaintiff is capable of performing a full range of light work with some postural limitations, including occasional overhead reaching with the left upper extremity and an option to alternate between sitting and standing while engaged in work activities.  Although the ALJ stated that Plaintiff did not report side effects from her medications, she did not specifically address evidence that suggests that Plaintiff's pain and symptoms would interfere with her ability to maintain sustained concentration and attention.  The ALJ also seems to have discounted Plaintiff's need for a cane because it was not formerly prescribed, even though Dr. Lakhani stated that Plaintiff required a cane for occasional walking and standing.  Additionally, it appears that the ALJ based her RFC determination for light work primarily upon the opinion of Ms. Giles, the single decisionmaker, who determined that Plaintiff was capable of performing such work.

17

This report recommends that this case be remanded for reconsideration of Plaintiff's credibility assessment and the weight assigned to Ms. Giles' physical RFC and Dr. Lakhani's opinions. A decision on remand to assign different weight to the medical opinions or attribute greater weight to Plaintiff's testimony may require a modification to the RFC. Even if the RFC is not modified, it is the undersigned's opinion that additional discussion and support should be provided to justify the RFC for light work. In addition, the ALJ should provide additional discussion as to whether Plaintiff's use of a cane might limit or preclude light work, whether Plaintiff is capable of occasional reaching overhead with the left shoulder in light of evidence that suggests ongoing left shoulder impairments, and whether Plaintiff's pain and symptoms may cause limitations in her ability to concentrate and maintain focus. Therefore, it is the recommendation of the undersigned that the ALJ reconsider the RFC determination on remand.

## VI.    CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiff's motion for summary judgment or remand (docket no. 12) be granted, Defendant's motion for summary judgment (docket no. 19) be denied, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for reconsideration consistent with this recommendation.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but

fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: August 2, 2013          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 2, 2013                s/ Mona K. Majzoub
                                      Case Manager


19